**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

VITALI MAKARENKOV,

    Petitioner,

v.                                    Case No.:    8:09-CR-286-T-24EAJ
                                                              8:12-CV-1126-T-24EAJ

UNITED STATES OF AMERICA,

    Respondent,
_____/

**ORDER**

This matter comes before this Court on Vitali Makarenkov's 28 U.S.C. § 2255 motion to vacate or set aside his sentence for (1) conspiracy to possess with intent to distribute 500 grams or more of cocaine and (2) attempting to possess with intent to distribute 500 grams or more of cocaine. (Doc.-Cr. 152). The Government filed a response in opposition, and Makarenkov filed a reply to the Government's response in opposition. (Doc.-Cv 7, 10). Makarenkov's § 2255 motion is timely.

**I. BACKGROUND**

On June 18, 2009, a federal grand jury indicted Makarenkov and a co-defendant with conspiring to possess five kilograms or more of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and attempting to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B) and 18 U.S.C. § 2. On September 2, 2009, a jury convicted Makarenkov on both counts. On December 8, 2009, this Court sentenced Makarenkov to seventy-two months in prison for each count, with both sentences running concurrently. Makarenkov appealed, and the judgment and sentence were

affirmed in part and vacated and remanded in part. The judgment contained a clerical error and the case was remanded with instructions to correct the clerical error. Otherwise, the judgment and sentence were affirmed.

### A. The Relevant Facts

In December 2008, Stanislav Satarinov, Makarenkov's co-defendant, contacted a confidential source ("CS") for the Drug Enforcement Agency.[1] Satarinov inquired whether the CS could help Satarinov find a supplier who could sell kilogram quantities of cocaine and ship it to Satarinov in St. Petersburg, Russia. Satarinov told the CS that he would first send someone to Tampa, Florida to purchase one kilogram to test its quality. Once Satarinov confirmed the quality, he would purchase large amounts on a monthly basis with the eventual goal of purchasing 50 kilograms of cocaine each month.

In January 2009, Satarinov reported difficulties with acquiring travel documents to send someone to the United States to pick up the test kilogram of cocaine. Agent Corbett of the DEA had the CS inform Satarinov that the cocaine could be shipped to Europe or Russia. Thereafter, the CS and Satarinov negotiated a $2,000-per-kilogram shipping fee to have the cocaine shipped to Europe and then Russia. The CS told Satarinov that they would send no less than five kilograms to Europe, and they would require transportation money before anything was shipped.

---

[1] The Court notes that Makarenkov has contested in his § 2255 motion, as he did at trial and on direct appeal, whether the CS or Satarinov initiated contact with the other. (Dkt. 2, p. 3). The Government argues that Satarinov had left a note on the CS's door. (Dkt. 7-2, p. 3). Makarenkov disputes the existence of the note in this § 2255 motion, as it was not produced at trial. (Dkt. 2, p. 3). Makarenkov argues that this dispute was never sufficiently resolved at trial, and it casts doubt on the Government's ability to prove the existence of a conspiracy involving Makarenkov at the time of the recorded conversations, which were presented at trial. Makarenkov notes that the Government cannot initiate a conspiracy; thus, if the CS initiated contact, Makarenkov argues that he is free from conspiracy. In his appellate brief, Makarenkov states that Satarinov initiated contact with the CS, but Makarenkov comments in a footnote that he does not concede this fact as necessarily true. (Dkt. 7-1, p. 3, n.1).

2

Satarinov agreed to pay $25,000 per kilogram and an additional $2,000 per kilogram for the shipping costs. On January 28, 2009, Satarinov sent $10,000 to the CS to cover the shipping cost of five kilograms. A series of issues arose, however, and Agent Corbett, Satarinov, and the CS agreed to return to the original plan of having Satarinov send someone to the United States to purchase a test kilogram and ship it to Satarinov in Russia.

By May of 2009, Agent Corbett began dealing directly with Satarinov, and the CS was cut out of the conversations entirely. On May 12, 2009, Satarinov told Agent Corbett that a man named "Michael" (later identified as Vitali Makarenkov) would arrive in a week's time to pick up the cocaine. In response to Agent Corbett's questions about what could be discussed with "Michael" regarding this transaction and future dealings, Satarinov replied: "You can go through future things with him, too. He is not just a simple employee, he's like one of us. . . . He's in the organization." (Doc.-Cr 77 [Trial Transcript] at 198, 201).

On May 20, 2009, Satarinov called Agent Corbett and stated that "Michael" (Makarenkov) would be arriving in two days. On May 23, 2009, Makarenkov called Agent Corbett, and the two scheduled a meeting. When the two met, Makarenkov requested Agent Corbett's help to purchase a vehicle to transport the drugs because Makarenkov's original helper had backed out.[2] Makarenkov stated that he would buy a jet ski and trailer so he could hide the cocaine in the jet ski. He also indicated that he had a contact in Florida who would take care of the shipping. After Makarenkov gave Agent Corbett the money for the cocaine, he was arrested.

---

[2] Throughout the parties' conversations, they referred to the cocaine as Chevrolet Tahoes. (Doc.-Cr 77 at 169, 174).

B. Makarenkov's Appeal

On appeal, Makarenkov argued that this Court had erred in admitting a recorded conversation between Makarenkov's co-conspirator, Satarinov, and the CS, in violation of *Crawford v. Washington*, 541 U.S. 36 (2004). Alternatively, Makarenkov argued that even if admitting the recording did not violate *Crawford*, the statements were still improperly considered under Federal Rule of Evidence 801(d)(2)(E), regarding a co-conspirator's statement, because the Government had failed to establish that a conspiracy involving Makarenkov existed at the time the statements were made. He further argued that this Court erred in admitting the CS's hearsay statements. Makarenkov's appeal also sought to correct a clerical error regarding his judgment.[3] The Eleventh Circuit affirmed his conviction, finding that the admitted statements were not testimony (and thus did not violate *Crawford*) and were not hearsay (and thus were admissible). But the Eleventh Circuit vacated and remanded for this Court to correct the clerical error in the judgment.

C. The § 2255 Motion

Makarenkov raises two issues in his § 2255 motion. In Ground One, Makarenkov states that there was "[o]nly one witness and doubtful testimony. Evidentiary errors along with prosecutorial misconduct." (Dkt. Cr-152, p. 1). Ground Two alleges that the Government's reverse sting operation was solely manufactured to obtain Makarenkov's arrest and thus constitutes "outrageous government conduct" in violation of Makarenkov's due process rights. In its response in opposition, the Government presumed that Makarenkov's § 2255 motion alleged ineffective assistance of counsel, and argued accordingly. In his reply to the

---

[3] This Court's written judgment mistakenly identified that Makarenkov was convicted under 21 U.S.C. § 841(b)(1)(A) when he was actually convicted of a lesser-included 841(b)(1)(B) violation.

Government's response, however, Makarenkov states "[a]lthough ineffective assistance of counsel could be the collateral attack in a § 2255 motion, I am not arguing that here." (Dkt. Cv-10, p. 3) and expressed satisfaction with both his trial and appellate counsels' representation.

Makarenkov clarified and reiterated that his § 2255 motion only challenged his sentence on two grounds: (1) evidentiary concerns and prosecutorial misconduct and (2) outrageous government activity.  Accordingly, this Court will not address ineffective assistance of counsel.

## II. DISCUSSION

"A criminal defendant who fails to object at trial, or to raise an available ground of error on direct appeal, is procedurally barred from raising the claim in a § 2255 motion, absent a showing of cause and prejudice or a fundamental miscarriage of justice." *DiPietro v. U.S.*, 251 F. App'x 606, 607 (11th Cir. 2007) (citing *Mills v. U.S.*, 36 F.3d 1052, 1055 (11th Cir. 1994)). It is undisputed, and Makarenkov admits, that the two issues raised in the instant § 2255 motion were not raised at trial or on direct appeal. (Dkt CV 2, p. 4) ("Even though I haven't raised this issue before, I would like to raise it in this motion for an acquittal."). Accordingly, the Court finds that the procedural default rule bars both grounds for relief contained in Makarenkov's § 2255 motion.

### A. Ground One: "Evidentiary Issues Along with Prosecutorial Misconduct"

In Ground One, Makarenkov questions the jury's ability to convict him based on the evidence presented at his trial. He frames the jury's decision as one between a "good guy" (Agent Corbett) and a "bad guy" (Makarenkov). Makarenkov appears to argue that Agent Corbett, as an experienced DEA agent, qualified as an *expert* under Federal Rule of Evidence 702 but opined on the evidence based only on personal beliefs—a privilege restricted to *lay persons* under Federal Rule of Evidence 701.

Specifically, Makarenkov argues that Agent Corbett relied on the CS's statements regarding a note on the CS's door, which requested that the CS contact Satarinov. Makarenkov claims that this note is a material piece of evidence because it establishes whether the government initiated the conspiracy through its CS (which would allegedly free Makarenkov from the conspiracy) or whether Satarinov actually left the note on the CS's door and therefore initiated the conspiracy himself. Makarenkov argues that the note was never admitted in trial, and so Agent Corbett's testimony regarding the note was the jury's only information regarding this piece of evidence. As a result, Makarenkov alleges, Agent Corbett's expert testimony that Satarinov had left the note (and thus initiated the conspiracy) was a personal opinion on the evidence, and thus "usurped the province of the jury." (Dkt. 2, p. 3).

Makarenkov also alleges that Agent Corbett explained to the jury the meaning of various drug-related terms used by the defendants and informant. Makarenkov complains that the agent never explained the source of his definitions and that the jury would naturally accept his interpretations because Agent Corbett is the "good guy."

Lastly, Makarenkov alleges that Agent Corbett modified the written transcripts of his conversation with Makarenkov. Though the jury heard the recorded conversation itself, Makarenkov argues that the jury relied upon the modified, written transcripts. The modified transcripts are apparently the basis of Makarenkov's allegation of prosecutorial misconduct. However, Makarenkov agreed to the transcript's accurate translation, and he did not object to its admission into evidence:

> MS. PELUSO [Counsel for the United States]: Yes, Your Honor, the defense and the Government have agreed that the portions that are reflected that were in Russian, they're accurately translated into English on this transcript.
>
> \*   \*   \*

>    MS. PELUSO: We move, at this time, to admit Government's Exhibits 12-A and 12-B into evidence.
>
>    MR. HUED [Counsel for Makarenkov]: No objection, Your Honor.
>
>    THE COURT: All right. I'll receive into evidence 12-A, which is actually the recording, and 12-B, which is a transcript of the recording.

(Doc.-Cr 77, p. 226).

1. Prosecutorial Misconduct Claim is Defaulted

Generally, cognizable claims under 28 U.S.C. § 2255 must be based on a constitutional right. *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988). The evidentiary issues raised by Petitioner are not violations of a constitutional right and are not cognizable under §2255.

"In some cases, prosecutorial misconduct may occasionally be so great as to constitute a violation of the Due Process Clause of the Constitution." *DiPietro*, 251 F. App'x at 608 (citation omitted). Here, the conduct complained of by Makarenkov did not happen, and even if it did, the fact that the jurors heard the taped conversation while viewing the transcript would obviate any prejudice.

In addition, Makarenkov's claim is procedurally barred. Makarenkov had the opportunity to raise the issue of evidence violations or prosecutorial misconduct at trial and then again on direct appeal. He failed to do so. His claim is therefore procedurally barred. *Mills v. U.S.*, 36 F.3d 1052, 1055 (11th Cir. 1994) ("Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding.").

<u>2. Default of Evidentiary Violations and Prosecutorial Misconduct Claims Are Not Excused</u>

When a petitioner has procedurally defaulted on a claim, "he must show cause for, and actual prejudice from, any alleged error." *DiPietro*, 251 Fed. Appx. at 608 (citation omitted). Makarenkov has not explained his failure to raise the evidentiary issues or prosecutorial misconduct at trial or on direct appeal. While ineffective assistance of counsel may allow a defendant to avoid showing cause, *id.*, Makarenkov expressly stated that he was satisfied with his representation, and his motion does not raise a claim of ineffective assistance of counsel. (Dkt. 10, p. 3) ("Although[] ineffective assistance of counsel could be the collateral attack in a § 2255 motion, I am not arguing that here."). Thus, Makarenkov has failed to identify cause for his failure to raise these issues at trial or on direct appeal, and thus, the Court need not evaluate the prejudice prong. His claim therefore is procedurally barred.

<u>B. Ground Two: "Outrageous Government Conduct"</u>

Ground Two of Makarenkov's § 2255 motion alleges that the Government conducted a reverse sting operation, which was constructed solely to obtain his conviction and therefore constituted "outrageous government conduct" in violation of his due process rights.

Makarenkov claims that the Government created, engineered, maintained, and controlled all activity relating to the conspiracy. He argues that the CS, acting on behalf of the Government, initiated the contact with Satarinov, who Makarenkov alleges is a corrupt member of the Russian police. Because one cannot initiate a conspiracy between government agents, Makarenkov argues that he could not have been guilty of conspiracy. He further argues that the Government's reverse sting operation, which culminated in his arrest, was manufactured by outrageous government conduct in violation of his due process rights.

### 1. The Outrageous Government Conduct Claim is Procedurally Barred

Claims of outrageous government conduct attack the validity of the indictment and thus the Government's ability to invoke judicial proceedings against the defendant. *See U.S. v. Russell*, 411 U.S. 423, 431–32 (1973). Accordingly, such claims should be raised after the indictment and prior to trial, so the trial court can conduct hearings to resolve any disputed facts. *U.S. v. Nunez-Rios*, 622 F.2d 1093, 1098-99 (2d Cir. 1980) (citations omitted). Makarenkov made several motions in limine, but he never raised the issue of outrageous government conduct. Because Makarenkov failed to raise this issue at trial or on his direct appeal, his outrageous government conduct claim is procedurally barred.

Makarenkov acknowledges his failure to raise this issue prior to the instant § 2255 motion, but he nonetheless asserts that the Government's outrageous conduct violated his due process rights and thus compels this Court to hear his claim. *See* 28 U.S.C. § 2255 (permitting attack on a sentence that was "imposed in violation of the Constitution"). Under the rule of procedural default, however, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. U.S.*, 365 F.3d 1225, 1234 (11th Cir. 2004). This rules governs all claims, including constitutional claims. *Id.* Accordingly, Makarenkov's claim for outrageous government conduct, which he asserts as a constitutional claim, is procedurally barred. *Id.* at 1232 ("[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal.").

### 2. The Defaulted Outrageous Government Conduct Claim is Not Excused

Makarenkov can evade the procedural bar to his outrageous government conduct claim by establishing one of two exceptions to the procedural default rule. *Id*. at 1234. He can show

"cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error." *Id.* (citations omitted). Alternatively, this Court may permit this motion to proceed forward if the constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.*

First, Makarenkov has not shown proper cause for failing to raise the claim of error at trial or on direct appeal. He simply explains that his counsel chose other, unsuccessful issues to challenge on direct appeal.

To fall within the fundamental miscarriage of justice (actual innocence) exception, a defendant must show that he or she is actually innocent of the charged crime. *Id.* at 1235 n.18. Actual innocence connotes *factual* innocence, not mere legal innocence. *McDaniel v. U.S.*, 491 Fed. Appx. 105, 108 (11th Cir. 2012). Makarenkov does not allege that he is factually innocent of the crimes. Rather, he asserts various legal challenges to undermine the legal definition of conspiracy. Thus, Makarenkov fails to satisfy the actual innocence exception. *See id.* ("[B]ecause [the defendant] does not assert that he was factually innocent of [the offense], his claim rests only on legal innocence and does not fall within the actual-innocence exception."). Therefore, Makarenkov's claims are not excused from the procedural bar.

## III. EVIDENTIARY HEARING

A petitioner is entitled to an evidentiary hearing only if his allegations, if proved, would establish his right to collateral relief. *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984). The burden is on the petitioner to establish the need for an evidentiary hearing. *See id.* Here, Petitioner has not established any basis for an evidentiary hearing because his § 2255 motion lacks merit.

**IV. CONCLUSION**

For the foregoing reasons, Makarenkov's § 2255 motion is **DENIED.** The Clerk is directed to enter judgment for the Government and to close the civil case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHERED ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). Id. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

It is so Ordered this 28th day of March, 2013

*[signature: Susan C. Bucklew]*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record
Pro Se Petitioner: Vitali Makarenkov